UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SKYLAR WHITELEY NEWBY,<br><br>Defendants. | Case No. 1:25-cr-00176-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is the Motion to Suppress filed by defendant Skyler Whiteley Newby (Dkt. 47). The Court held an evidentiary hearing on June 16, 2026. For the reasons explained below, the Court denies the motion.

## BACKGROUND

Police searched defendant Skyler Newby's home pursuant to a warrant on May 13, 2025. The present motion to suppress hinges mostly on the layout of the home, located at 3200 N. Mountainview Drive in Boise. The approximately two-acre property consists of a primary residence and an accessory dwelling unit (ADU) with a shop and one-bedroom apartment. The main residence and ADU were separated by a swimming pool, yard, and retaining wall. Tr. at 75:12-17. Mr. Newby's mother and stepfather had resided in the apartment part time since

**MEMORANDUM DECISION AND ORDER - 1**

November 2024 and paid approximately $300 per month in rent. Tr. at 86:14. They were away visiting other family during the search.

Two days before the search, Mr. Newby's wife, Madeline Newby, called Ada County Dispatch to report that her four-year-old daughter, B.N., may have been sexually abused. Boise Police Department (BPD) officers arrived at the Newby's home and observed that Mrs. Newby appeared to be under the influence of drugs. She gave the officers permission to search the home, where they found a white powdery substance on a counter and mirror in the master bedroom. A medical examination of B.N. showed no evidence of sexual assault, but her urine tested positive for cocaine.

Police arrested both Mr. and Mrs. Newby for injury to child. Mrs. Newby was also charged with cocaine possession. In a recorded jail call to her sister, Mrs. Newby stated that Mr. Newby walked around with "a fanny pack of 'shit' doing it all day" and that he had "everything else locked up in the safe." Ex. A at 8, Dkt. 47-2. Based on this information, Det. Morlock sought a search warrant for the Mountain View Drive residence. He also ran a criminal history check on Mr. Newby, which showed that Mr. Newby had an Idaho Department of Corrections (IDOC) inmate number and had been discharged from probation or parole about ten years earlier.

A magistrate authorized the warrant on May 13. The affidavit provided the

**MEMORANDUM DECISION AND ORDER - 2**

following description of the place to be searched:

> Premises: 3200 N Mountain View Dr. Boise, ID 83704. The residence is on the north side of Ustick where Mountain View drive intersects. The property lot is approximately 2 acres, has a detached shop used as an additional dwelling unit on the north side, a pool, and is two levels. . . .

Ex. B at 1, Dkt. 47-2.

> The warrant provided the following description of evidence to be seized:

> 1. Drug paraphernalia, illegal drugs, and indicia of narcotic sales to include any safe.
> 2. Indicia of ownership or occupancy.
> 3. Photographs of the inside of the residence pre, during, and post search.

*Id.*

Upon executing the warrant, BPD officers realized that the ADU was independently occupied, and they did not enter it. Searching the main residence, officers located a safe in the master bedroom closet containing 400 grams of cocaine, a pistol, cash, and identification documents for Mr. and Mrs. Newby. In another room, officers found approximately a dozen firearms on the ground. Det. Morlock inspected these for serial numbers and found one "ghost gun" with no serial number and two guns with attached silencers. He ordered the seizure of all the firearms. Det. Morlock requested a more detailed criminal history check for Mr. Newby and confirmed his past felonies.

Mr. Newby was charged in the present case with unlawful possession of

firearms. He moves to suppress the evidence seized during the May 13 search because the search warrant failed to identify with particularity the residence to be searched, and the contraband nature of the firearms was not readily apparent. The Court held oral argument on June 16, 2026, and the parties subsequently submitted supplemental briefing.

## LEGAL STANDARD

In a motion to suppress under the Fourth Amendment, the defendant bears the burden of establishing that a warrant was invalid. The burden then shifts to the government to establish a justification or exception to the warrant requirement by a preponderance of the evidence. *See United States v. Cales*, 493 F.2d 1215, 1216 (9th Cir. 1974).

## ANALYSIS

Mr. Newby argues first that the warrant was facially void because it authorized the search of the ADU without providing an independent probable cause. In the alternative, he says that Det. Morlock unlawfully seized the firearms because the search warrant did not list them, and their contraband nature was not readily apparent. The Court finds that the warrant was indeed defective, but the good faith exception to the exclusionary rule applies. Further, the contraband nature of the guns was readily apparent because Det. Morlock had probable cause to believe that Mr. Newby had past felony convictions.

MEMORANDUM DECISION AND ORDER - 4

### 1.  Validity of the Search Warrant

A warrant must provide a particularized showing of probable cause for each home subject to search—for instance, an entire apartment building cannot be searched when probable cause arises only from one unit. *See Garrison v. Maryland*, 480 U.S 79, 85 (1987). The Court agrees with Mr. Newby that the ADU was its own residence—not curtilage—and therefore required its own probable cause finding. By authorizing the search of both residences, the warrant was indeed defective. But crucially, law enforcement did not actually search the ADU, and its inclusion in the search warrant was an honest and reasonable mistake. The good faith exception to the exclusionary rule exists for precisely this type of situation.

### A. Particularity Requirement

"[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched . . . ." U.S. Const., amend. IV. When law enforcement seeks to search premises containing multiple dwelling units—for instance, several different apartments—this particularity requirement typically means that the warrant must establish probable cause for each unit. *See United States v. Gilman*, 684 F.2d 616, 618 (9th Cir. 1982); *United States v. Hinton*, 219 F.2d 324, 325-26 (7th Cir. 1955). But this general rule "does not apply if the defendant was in control of the whole premises or they were occupied in common, if the entire premises were suspect, or if the multiunit

character of the premises was not known to the officers." *Gilman*, 684 F.2d at 618.

The first question is whether the ADU received independent Fourth Amendment protections. "[T]he Fourth Amendment is not violated by a search of the grounds or outbuildings within a residence's curtilage where a warrant authorizes a search of the residence." *United States v. Cannon*, 264 F.3d 875, 880 (9th Cir. 2001). If the outbuilding were indeed only a shop, it would likely be curtilage. *See United States v. Dunn*, 480 U.S. 294, 301 (1987). But the Ninth Circuit has made clear that a separate dwelling requires a separate warrant. *Id.* at 879. This is true even when the dwelling unit is a converted garage or a guest room used by a third party with a reasonable expectation of privacy—these spaces "cannot be viewed as an extension of the main house." *Id.* at 79. And a reasonable expectation of privacy exists when (1) the individual has sought to preserve something as private, and (2) society is prepared to recognize that expectation of privacy as reasonable. *E.g., Bond v. United States*, 529 U.S. 334, 338 (2000).

Here, the evidence establishes that Mr. Newby's mother and stepfather resided in the ADU and had a reasonable expectation of privacy. Mr. Newby's mother testified that she and her husband used the ADU as their primary residence from November 2024 until Mr. Newby's arrest in May 2025. Even an overnight guest can have a reasonable expectation of privacy, *see Minnesota v. Olsen*, 495 U.S. 91, 98 (1990), and they were far more than overnight guests. They had their

own key to the apartment, kept personal property there for more than six months, and listed 3200 Mountainview as their address on an insurance policy. Tr. at 75-76, 79-80. Although they traveled frequently, this was their primary residence. The ADU was not a storage shed or an empty bedroom under Mr. Newby's control. It was his parents' temporary home. The Fourth Amendment's protections do not vanish simply because a person lives in an ADU without a separate street address. *See Cannon*, 264 F.3d at 779-80.

The Court thus holds that law enforcement were required to establish separate probable cause to search the ADU.

### B. Good Faith Exception

The warrant was deficient because it showed probable cause only for the primary residence, not the ADU. But officers did not search the ADU. One must not lose sight of the forest for the trees here: law enforcement had probable cause only to search the main residence, and the main residence is the only place that they searched. The warrant's flaw was purely theoretical, and the good faith exception excuses this shortcoming.

The exclusionary rule is a judicial doctrine created to deter police misconduct. "Where suppression fails to yield appreciable deterrence, exclusion is clearly unwarranted." *David v. United States*, 564 U.S. 229, 237 (2011). Thus, "evidence obtained pursuant to a constitutionally infirm warrant may nonetheless

be admitted so long as the officers acting on the search or arrest warrant were unaware of—and had no reason to be aware of—the warrant's infirmities." *United States v. Barnes*, 895 F.3d 1194, 1201 (9th Cir. 2018).

To be sure, Det. Morlock was not entirely unaware of the ADU's status. For starters, he described it as an "accessory dwelling unit" on the warrant affidavit. He also testified that people had told him that guests regularly stayed in the unit. But when he initially visited the property on May 11, there were no vehicles parked at the ADU or other signs of long-term occupancy. Tr. at 40-41. He had at least some reason to think that the unit was under Mr. Newby's control.

If police had actually seized evidence from the ADU, the analysis might come out differently. What happened here, however, is the epitome of a harmless error. Officers arrived at the property to execute the warrant, realized that the ADU was independently occupied, and limited the search to the main residence. Declaring the search of that residence unconstitutional because of a drafting mistake in a different portion of the warrant would do nothing to deter law enforcement misconduct.

The Court thus declines to suppress evidence seized from the main residence based on the warrant's failure to establish probable cause for the ADU.

### 2.  Plain View Doctrine

Mr. Newby next challenges the seizure of the firearms found in his residence

because the firearms were not listed in the warrant, and their contraband nature was not readily apparent. The Court disagrees with the latter assertion.

When incriminating evidence is in plain view, law enforcement may seize it without a warrant. *United States v. Horton*, 496 U.S. 128, 130 (1990). Under this "plain-view doctrine," police must have "probable cause to believe that an object in plain view is contraband without conduct some further search of the object." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). But police may not examine an object based on mere suspicion, then retroactively justify the search based on that inspection. *Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987).

In the present case, Mr. Newby's guns were contraband for multiple reasons—his past felony convictions, the lack of a serial number on one firearm, and the illegal silencers on two others. Det. Morlock could not observe the missing serial numbers or silencers until after he inspected the weapons, so plain view doctrine does not apply. But the evidentiary hearing made clear that Det. Morlock had probable cause to believe that Mr. Newby had past felony convictions. Prior to the search, he ran a criminal history check on Mr. Newby that revealed an IDOC inmate number. Tr. at 35:3-9. Although this search did not show Mr. Newby's specific convictions, the IDOC assigns inmate numbers only for felonies, not misdemeanors. Probable cause is a "flexible, common-sense standard." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). This information about Mr. Newby's past

**MEMORANDUM DECISION AND ORDER - 9**

incarceration was certainly enough to establish probable cause that the dozen guns found in his home were contraband.

Because the incriminating nature of the firearms was readily apparent, the Court declines to suppress the evidence.

## ORDER

Therefore, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress (Dkt. 47) is **DENIED**.

DATED: July 21, 2026

B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 10